438 S.E.2d 324

James Timothy **HENDERSON**; **Kathy Henderson**; **and Michelle Henderson and Amy Henderson, Infants Who Sue By Their Next Friend Kathy Henderson, Plaintiffs Below, Appellants,**

v.

**MEREDITH LUMBER COMPANY, INCORPORATED and Lawson Hamilton, Jr., Defendants Below, Appellees.**

No. 21532.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1993.

Decided Nov. 23, 1993.

Henry C. Bias, Jr., Lee B. Forb, Charleston, for plaintiffs.

Thomas V. Flaherty, Jeffery M. Wakefield, Flaherty, Sensabaugh & Bonasso, Charleston, for Lawson Hamilton, Jr.

NEELY, Justice:

James Timothy Henderson, his wife, Kathy and their children, Michelle and Amy appeal a summary judgment order holding that, as a matter of law, Lawson Hamilton, Jr. was not personally liable for Mr. Henderson's injuries and dismissing him as a party defendant. On appeal, the Hendersons contend that the

suit against Mr. Hamilton should not have been dismissed because Mr. Hamilton, as the owner of the land where Mr. Henderson's industrial accident occurred, failed in his duty under *W.Va.Code* 21–3–1 [1937] to provide a safe workplace. Because the record shows that Mr. Hamilton's suggestions about the property resulted from his corporate role with Meredith Lumber Co., Mr. Henderson's employer, and did not result from his ownership of the land, we find that the circuit court correctly dismissed the suit against Mr. Hamilton.

On 8 October 1990, Mr. Henderson, a truck driver for Meredith Lumber, was hauling logs between a logging operation in Mossy, West Virginia and Meredith Lumber's saw mill in Cabin Creek, West Virginia. Because Meredith Lumber's log yard was covered with mud to a depth of between 6 to 18 inches, Mr. Henderson stopped his log truck outside the yard at a sawdust pile to unstrap his load before going into the log yard to unload.[1] While Mr. Henderson was removing the last strap, a log from his truck rolled off and hit Mr. Henderson. Mr. Henderson fractured his leg and injured his spine making him a paraplegic.

Alleging that Mr. Henderson's injuries resulted from Meredith Lumber's "deliberate intention," a violation of *W.Va.Code* 23–4–2 [1991][2], the Hendersons sued Meredith Lumber. By an amended complaint, the Hendersons added Mr. Hamilton, the land owner, as a party defendant, alleging that he was liable for Mr. Henderson's injuries under *W.Va.Code* 21–3–1 [1937] because he failed to provide a safe workplace.

After extensive discovery and a hearing, the circuit court on 8 October 1992 denied Mr. Hamilton's motion to be dismissed as a party defendant; after reconsidering, however, the circuit court dismissed Mr. Hamilton

on 15 October 1992. The Hendersons note that the only new evidence presented between the circuit court's decisions was the deposition of Edward Young, a former employee of Meredith Lumber, and that the circuit court dismissed Mr. Hamilton two days after the Hendersons settled with Meredith Lumber for $1,250,000.

I

■ On appeal, the Hendersons argue that *W.Va.Code* 21–3–1 [1937] imposes an absolute duty on the owner to maintain his property in a reasonably safe condition. *W.Va.Code* 21–3–1 [1937] states, in pertinent part:

Every employer and every owner of a place of employment, place of public assembly, or a public building, now or hereafter constructed, shall so construct, repair and maintain the same as to render it reasonably safe.

■ *W.Va.Code* 21–3–1 [1937] is the introductory section of the *Code* chapter that imposes a statutory duty upon a West Virginia employer to provide and to maintain the employment place in a reasonably safe condition. The goal of *W.Va.Code* 21–3–1 [1937] *et seq.* is to assure workers a reasonably safe workplace and the legislature placed such a responsibility on the employer and the owner. The employer's duty is directly related to employment activity—activity controlled by the employer—and the owner's duty is limited to providing a reasonably safe workplace, unless the owner continues to exercise control of the place of employment. *See W.Va.Code* 21–3–1, through –18. When the owner of a place of employment provides a reasonably safe workplace and exercises no control thereafter, the owner has complied

1. The record indicates that the logs on Mr. Henderson's truck may have been piled higher than the standards used to hold the logs in place and that Meredith Lumber's trucks were routinely overloaded.

2. Violations of *W.Va.Code* 23–4–2 [1991] are commonly known as Mandolidis causes of action based on our decision in *Mandolidis v. Elkins Indus., Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978). *See also, Blevins v. Beckley Magnetite,*

*Inc.*, 185 W.Va. 633, 408 S.E.2d 385 (1991) (to be liable under *W.Va.Code* 23–4–2(c) [1991] an employer must actually possess knowledge of the existence of a specific unsafe working condition); *Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990) (recognizing the statute created a legislative standard for loss of employer immunity from civil liability for a work-related injury and noting that "deliberate intention" can be proven by two separate and distinct methods).

with the responsibilities imposed under *W.Va.Code* 21-3-1 [1937].

The Hendersons assert that this Court's holding in *Pack v. Van Meter*, 177 W.Va. 485, 354 S.E.2d 581 (1986) (Miller, C.J.), places an absolute statutory duty on an owner to provide and maintain a reasonably safe workplace. Although in *Pack* we recognized that an owner who exercises control over the property has a duty to provide a reasonably safe workplace, the broad interpretation of *Pack* urged by the Hendersons is not consistent with *Pack*'s facts. In *Pack*, Ms. Pack, an employee of Nelson's Dress Shop, fell down an interior stairway at work and injured her left knee and back. The stairway Ms. Pack fell down had no handrail and the steps were made of hard tile with the edges capped by metal strips. Noting that "*W.Va.Code,* 21-3-6 ... requires handrails on stairways and safe treads on steps," we found that an owner who leased property with a stairway in a defective condition had under *W.Va.Code* 21-3-1 [1937] violated a duty shared with the employer to provide a safe workplace. *Pack*, 177 W.Va. at 490, 354 S.E.2d at 586. We specifically noted that "[t]he Van Meters could have corrected these structural problems prior to renting the store to Nelson's Dress Shop." *Pack, id.* Thus in *Pack*, the Van Meters were held liable because before they leased the store, they failed to correct a defective stairway problem as required by *W.Va.Code* 21-3-6 [1923]. *Pack* also noted that some of the safety requirements "in W.Va.Code, 21-3-1 through -18 ... are clearly the responsibility of an employer because they involve machines or other instrumentalities directly related to the employment activity over which

the owner of the place of employment exercises no control." *Pack, id.* Therefore, we find no merit in the Hendersons' argument that our holding in *Pack* recognized that *W.Va.Code* 21-3-1 [1937] imposes an absolute duty on a property owner to provide a safe workplace.

Several of our recent cases have noted that the owner who provides a reasonably safe workplace must continue to exercise control of the workplace in order to impose liability on the owner. In *Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 305, 418 S.E.2d 738, 751 (1992) (Miller, C.J.), we found that the owner who was also the occupier of the premises has a duty "to provide a reasonably safe place to work...." In Syl.Pt. 3, *Taylor v. Sears, Roebuck and Co.*, 190 W.Va. 160, 437 S.E.2d 733 (1993) (Brotherton, J.), we held that when an owner exercised no control over the equipment provided by the contractor for use by the contractor's employees, the "reasonably safe place to work" theory did not impose liability on the owner. In *Taylor*, the building where the accident occurred was under construction and "Sears' [the building's owner] control over the construction was apparently negligible." 190 W.Va. at 163, 437 S.E.2d at 736.

Our requirement that an owner who provides a reasonably safe workplace should continue to exercise control over the property before the reasonably safe place to work theory imposes liability on the owner is consistent with holdings from the other jurisdictions that have similar statutes. The other states that have similar statutes requiring an owner to provide a reasonably safe workplace include: Arkansas, Georgia, Nevada and Wisconsin.[3] In *Carter v. Fraser Construc-*

---

3. *Ark.Code Ann.* 11-2-117(b) [Michie 1987] provides:
    Every employer and every owner of a place of employment, place of public assembly, or public building, now or hereafter constructed, shall construct, repair, and maintain it so as to render it safe.
    *Ga.Code Anno.* 34-2-10(b) [Michie 1937] provides:
    Every employer and every owner of a place of employment, place of public assembly, or public building, now or hereafter constructed, shall so construct, repair, and maintain such facility as to render it reasonably safe.
    *Nev.Rev.Stat.* § 618.395 [1975] provides:

An employer, owner or lessee of any real property in this state shall not construct, cause to be constructed or maintained any place of employment that is not safe and healthful. *Wis.Stat.Ann.* 101.11(1) [West 1976] provides, in pertinent part:
    Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.
and *Wis.Stat.Ann.* 101.11(2)(a) [West 1976] provides, in pertinent part:
    [N]o employer or owner, or other person shall hereafter construct or occupy or maintain any

*tion Co.*, 219 F.Supp. 650, 657 (W.D.Ark. 1963) the federal district court held that Arkansas' safe work statute does not apply unless the person charged "has control or custody of the employment, place of employment, or the employee." In *Horton v. Ammons*, 125 Ga.App. 69, 186 S.E.2d 469 (1971), *aff'd sub nom., Smith v. Ammons*, 228 Ga. 855, 188 S.E.2d 866 (1972) the Georgia court held that the owner's full surrender of the leased premises relieved the owner of liability to an employee who was injured when a light fixture installed under the lessee's direction fell on her. Although the owner in *Horton* retained a right to view the premises, the court found that "[w]here the lessee has exclusive control of the premises, the lessor has no duty to inspect or any liability for defective construction or installation not made under his direction. [Citations omitted.]" *Horton*, 125 Ga.App. at 70, 186 S.E.2d at 472. In *Frith v. Harrah South Shore Corp.*, 92 Nev. 447, 450, 552 P.2d 337, 339–40 (1976), the Nevada Supreme Court found that "[n]othing can be found in the language of ... [the safe workplace] act suggesting a civil action by an employee injured by reason of an unsafe place of employment." In *Barth v. Downey Co.*, 71 Wis.2d 775, 239 N.W.2d 92 (1976) the Wisconsin court premised the owner's liability on his retention of supervision and control. "An owner or general contractor can owe a duty under the safe-place statute to a frequenter when a hazardous condition is created, but only if the owner or general contractor has reserved a right of supervision and control. [Footnote omitted.]" *Barth*, 71 Wis.2d at 778, 239 N.W.2d at 94. *See Hortman v. Becker Const. Co., Inc.*, 92 Wis.2d 210, 226, 284 N.W.2d 621, 629 (1979) (noting that an " 'owner' is defined in sec. 101.01(2)(i) as a 'person having ownership, *control or custody* of any place of employment or public building.' (Emphasis supplied.)").

In support of their contention that the owner has an absolute duty to provide a reasonably safe workplace, the Hendersons cite *Monares v. Wilcoxson*, 153 Ariz. 359, 736 P.2d 1171 (1987). Although in *Monares* the owner was held liable for the injuries that resulted from the worker's contact with energized power lines, the owner, who controlled the flow of energy to the power lines, had assured the contractor that the power lines were de-energized. In *Monares* the owner's control of the power lines was the basis for holding the owner liable for the employee's industrial accident.

## II

The Hendersons also contend that if *W.Va. Code* 21–3–1 [1937] requires an owner to retain control, then Mr. Hamilton is liable because he retained and exercised control over the property.

The Hendersons point out that Mr. Hamilton was vice-president of Meredith Lumber, which was formed about 15 years ago and named for Mr. Hamilton's granddaughter. Mr. Hamilton owned half of Meredith Lumber's stock shares and the other half was owned by Marion Compton, the company's president who managed the saw mill's operation. Although Mr. Hamilton may have made a small initial capital investment in Meredith Lumber, he made no other cash contribution and his main contribution was to allow the saw mill to operate on his Cabin Creek property without a lease and without paying rent. Mr. Hamilton testified that he did not enter into a lease because he wanted to develop the Cabin Creek property into an industrial park. Meredith Lumber's board of directors meetings were held in Mr. Hamilton's office building, which was not located on the property. An employee of another company owned by Mr. Hamilton assisted with Meredith Lumber's books.

When Meredith Lumber began to use the property, the land was unimproved, unpaved, cleared and level. None of the buildings then situated on the property was used by Meredith Lumber who constructed all of its buildings and other structures.

Mr. Hamilton received no dividends and no salary from Meredith Lumber. During various periods, Mr. Hamilton was both a suppli-

---

place of employment, or public building, that is not safe, nor prepare plans which shall fail

to provide for making the same safe.

er to and a customer of Meredith Lumber; their transactions were conducted at the prevailing rates. When Meredith Lumber was dissolved, a decision not related to the current lawsuit but based on two years of sustained losses, the sale of company property resulted in approximately $450,000 being placed in escrow pending the outcome of the Hendersons' suit.

Meredith Lumber's daily operations were directed by Mr. Compton, the company's president. Mr. Hamilton visited Meredith Lumber approximately six times a year. During one visit, Mr. Hamilton noticed the muddy conditions and spoke to Mr. Compton about spreading some rock to dry the mud. Although Mr. Compton initially believed spreading rock would be too expensive, he and Mr. Hamilton agreed to split the costs, Meredith Lumber buying and spreading the rock and Mr. Hamilton's trucks used for delivery. With the exception of this one occasion with Mr. Hamilton, Mr. Compton annually dealt with the muddy conditions by buying and spreading rock. Mr. Compton also had an employee install a drainage pipe to direct the water coming off the hill away from the saw mill.

Meredith Lumber did not occupy Mr. Hamilton's entire Cabin Creek property. Before Meredith Lumber began operation, Mr. Hamilton used part of the tract as a spoil pit for dumping turnpike debris. During Meredith Lumber's operation, on a different section of the tract, Mr. Hamilton operated a rock crusher. However, the operation was short lived due to the poor rock quality that deteriorated into sand within a year or less.

The Hendersons argue that these facts demonstrate that Mr. Hamilton continuing control of the property makes him liable under *W.Va.Code* 21–3–1 [1937]. Mr. Hamilton maintains that his control was related to his role as principal, officer and director for Meredith Lumber, which had control of the property. Moreover, Mr. Hamilton asserts that under *W.Va.Code* 23–2–6a [1949] he is immune from liability because he was an "officer ... acting in furtherance of the ... business and d[id] not inflict an injury with deliberate intention."

The present case presents the question of when the immunity from tort liability provided by *W.Va.Code* 23–2–6a [1948] applies to a corporate officer who is also the owner of the workplace who, under *W.Va.Code* 21–3–1 [1937] has a duty to provide a safe workplace.[4]

■ Our traditional method of statutory interpretation was stated in *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908):

A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

In accord *Cary v. Riss*, 189 W.Va. 608, 614, 433 S.E.2d 546, 552 (1993); Syl. Pt. 1; *State ex rel. Simpkins v. Harvey*, 172 W.Va. 312, 305 S.E.2d 268 (1983), *superseded by statute on another point as stated in*, *State ex rel. Hagg v. Spillers*, 181 W.Va. 387, 382 S.E.2d 581 (1989). *See also* Syl. Pts. 2, 3 and 4, *State ex rel. Fetters v. Hott*, 173 W.Va. 502, 318 S.E.2d 446 (1984).

*W.Va.Code* 23–2–6a [1948] states:

The immunity from liability set out in the preceding section [§ 23–2–6] shall extend to every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention.

■ *W.Va.Code* 23–2–6a [1949] extends the employer's immunity from liability set forth in *W.Va.Code* 23–2–6 [1991] to the employer's officer, manager, agent, representa-

---

4. When the workplace is owned by someone unrelated to the employer, that owner has no immunity under *W.Va.Code* 23–2–6a [1949] and, that owner's duty is limited to providing a reasonably safe workplace, unless the owner continues to exercise control of the workplace. *See Pack supra* and *Taylor supra* (in both cases the owner was unrelated to the employer).

tive or employee when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention.[5]

■ Applying our traditional method of statutory interpretation we find that when the employer's officer, manager, agent, representative or employee is also the owner of the place of employment, that person under the terms of *W.Va.Code* 23–2–6a [1949] is immune from liability so long as the action is in furtherance of the employer's business and does not deliberately inflict an injury.[6] *See Billy v. Consolidated Mach. Tool Corp.*, 51 N.Y.2d 152, 160, 432 N.Y.S.2d 879, 884, 412 N.E.2d 934, 939 (1980) ("an employer remains an employer in his relations with his employees as to all matters arising from and connected with their employment. He may not be treated as a dual legal personality, 'a sort of Dr. Jekyl [sic] and Mr. Hyde.' "); *Jackson v. Gibson* 409 N.E.2d 1236 (Ind.Ct. App.1980) (the president and sole shareholder of the corporate employer could not be sued in his capacity as owner of the land); *Vaughn v. Jernigan*, 144 Ga.App. 745, 242 S.E.2d 482 (1978) (suit was barred against the landlord, who was also employer's president, because any knowledge of the defective condition came to him through his involvement in the employer corporation and not as a landlord); *Kimball v. Millet*, 52 Wash.App. 512, 762 P.2d 10 (1988), *review denied*, 111 Wash.2d 1036 (1989) (owners of the farm, who were also officers and coemployees of the employer corporation, retained statutory immunity). *See also, Burton v. Berthelot*, 567 So.2d 649 (La.Ct.App.1990), *writ denied*, 569 So.2d 989 (La.1990) (statutory employer immunity did not extend to the landlord when the landlord was simply an investor in the employer corporation); *State ex rel. Auchter Co. v. Luckie* 145 So.2d 239 (Fla.1962), *cert. denied*, 148 So.2d 278 (1962) (a landlord, who was not acting as a contractor on the particular project giving rise to the accident, had no immunity as a statutory employer for this accident) *overruled Gator Freightways, Inc. v. Roberts*, 550 So.2d 1117 (1989) (finding the owner of the common carrier a statutory employer of workers' compensation claimant); *but see, Hogan v. Deerfield 21 Corp.*, 605 So.2d 979 (Fla.Ct.App.1992) (a hotel owner is not statutory employer and subcontractor's employee can sue an owner for injuries).

■ In the present case, to the extent that Mr. Hamilton's exercise of control of the property was in furtherance of Meredith Lumber's business, he has immunity for

---

5. *W.Va.Code* 23–2–6 [1991] states:

Any employer subject to this chapter who shall subscribe and pay into the workers' compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which such employer shall not be in default in the payment of such premiums or direct payments and shall have complied fully with all other provisions of this chapter. The continuation in the service of such employer shall be considered a waiver by the employee and by the parents of any minor employee of the right of action as aforesaid, which the employee or his or her parents would otherwise have: Provided, That in case of employers not required by this chapter to subscribe and pay premiums into the workers' compensation fund, the injured employee has remained in such employer's service with notice that his employer has elected to pay into the workers' compensation fund the premiums provided by

this chapter, or has elected to make direct payments as aforesaid.

6. Some jurisdictions, particularly California and Ohio, use the "dual capacity" or "dual *persona*" doctrine to determine the extent of employer immunity. Professor Larson defines the "dual *persona*" doctrine as follows: "An employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." 2A A. Larson, *The Law of Workmen's Compensation* § 72.81 (1983) [hereinafter, *Larson* ]. Professor Larson notes that although there are "exceptional situations in which the concept can legitimately be employed" (*Larson* § 72.81(a)), there is "virtual unanimity that an employer cannot be sued as the owner or occupier of land, whether the cause of action is based on common-law obligations of landowners or on statutes such as safe place statutes or structural work acts." *Larson* § 72.82. *See Deller v. Naymick*, 176 W.Va. 108, 342 S.E.2d 73 (1985) (refusing to apply the dual capacity doctrine to coemployee doctors).

those acts under *W.Va.Code* 23–2–6a [1949].[7] However, when Mr. Hamilton's exercise of control of the property was not in furtherance of Meredith Lumber's business, he is without statutory immunity.[8] The major incident that allegedly demonstrates Mr. Hamilton's exercise of control is his suggestion and assistance in spreading rock to dry the mud. Mr. Hamilton's suggestion and assistance in drying the mud was in furtherance of Meredith Lumber's business. The record shows that the land's muddy condition was a continual problem for the company, as shown by the installation of a drainage pipe and the annual spreading of rock. The only action of Mr. Hamilton described in the record that was not in furtherance of Meredith Lumber's business was his use of a different part of the land for his separate business ventures, namely the rock crusher and spoil pit. However, neither the rock crusher or spoil pit was operational when Mr. Henderson was injured and neither is alleged to be related to Mr. Henderson's accident.

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). *In accord* Syl. Pt. 2, *Firstbank Shinnston v. West Virginia Ins. Co.*, 185 W.Va. 754, 408 S.E.2d 777 (1991).

In the present case, there are no material facts in dispute and the Hendersons present no facts to show that Mr. Hamilton's acts were not in furtherance of Meredith Lumber's business.

For the above stated reasons, the decision of the Circuit Court of Kanawha County is affirmed.

Affirmed.

7. The Hendersons do not allege that Mr. Hamilton acted with a deliberate intention to inflict the injury.

8. If necessary the "dual purpose" doctrine, discussed in *Jenrett v. Smith*, 173 W.Va. 325, 332,

BROTHERTON, J., deeming himself disqualified did not participate in this opinion.

315 S.E.2d 583, 590 (1983) can be "a useful tool for determining whether … [an officer-owner is] 'in furtherance of the employer's business' for purposes of tort immunity pursuant to *W.Va. Code*, 23–2–6a [1949]."