437 S.E.2d 733

Gilbert TAYLOR, Plaintiff
Below, Appellee,

v.

SEARS, ROEBUCK AND CO., a New York
Corporation Qualified to do Business in
the State of West Virginia, Defendant
Below, Appellant.

No. 21135.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 26, 1993.

Decided April 26, 1993.

Concurring Opinion of Chief Justice
Workman, Dec. 14, 1993.

Allan H. Masinter, Charleston, for appellee.

William E. Mohler, Charleston, for appellant.

BROTHERTON, Justice:

The appellant, Sears, Roebuck and Company ("Sears"), appeals from a July 24, 1991, Kanawha County Circuit Court order upholding a jury verdict awarding the appellee, Gilbert Taylor, $150,000 in damages for injuries resulting from an accident which occurred on May 17, 1983. At that time, the appellee was employed as a carpenter by Mellon–Stuart Company ("Mellon") and was involved in the construction of the Sears Automotive Center Building, which was located across from the Charleston Town Center Mall in Charleston, West Virginia. Mellon was the general contractor for Sears, while Zando, Martin & Milstead, Inc. ("Zando") was the architect under contract with Mellon.

The appellee had eighteen years of experience working with scaffolds. In this job, he worked almost exclusively on scaffolds which were furnished by Mellon and which he assembled himself. The appellee was under Mellon's supervision and control and had been working on this job for approximately five weeks when the accident occurred.

On May 17, 1983, the appellee and another worker were instructed to draw a chalk line on the wall of one of the rooms in the automotive center to designate the location of a drop ceiling. This required using fifteen-foot rolling scaffolds and a water level: a man on one scaffold would hold one end of the water level, while the man on the other scaffold would hold the other end of the water level, and one of them would then make the mark on the wall. The appellee worked on the scaffold without locking its wheels so that he could move the scaffold along the wall simply by holding on to the ceiling trusses, thus eliminating the need to get down each time and unlock the wheels in order to move the scaffold.

The accident occurred as the appellee's scaffold was flush against the wall. The appellee reached up with both arms, while on his tip-toes, so that he could make a chalk mark on the wall. This motion pushed the scaffold away from the wall, and the appellee fell down between the scaffold and the wall to the ground.

The appellee sued Zando on May 15, 1985, seeking to recover damages for his injuries. However, Zando settled with the appellee on the day of trial, and the appellee's case against Sears proceeded to trial on June 17, 1991.

On June 19, 1991, the jury returned its verdict, finding as follows:

### VERDICT FORM

. . .

. . .

Do you find, from a preponderance of the evidence, that Gilbert Taylor was negligent and that his negligence was a proximate cause of the accident.

Yes __X__

. . .

Do you find from a preponderance of the evidence that Sears was negligent, and that its negligence proximately contributed to the accident and the plaintiff's injuries?

Yes __X__

. . .

. . .

Percentages of Negligence, If Any

| | |
|---|---|
| GILBERT TAYLOR (if you answered 'yes' to Question 1. above, enter percent here. | 15% |

. . .

| | |
|---|---|
| SEARS (if you answered 'yes' to question 2. above, enter percent here. | 5% |

. . .

| | |
|---|---|
| Percentage of negligence, if any, of Zando, Martin & Milstead | 5% |
| Percentage of negligence, if any, of Mellon–Stuart | 75% |
| Total | 100% |

We, the jury, assess Gilbert Taylor's damages at One Hundred Fifty Thousand Dollars ($150,000.00), including medical bills of Sixteen Thousand One Hundred Forty-two and 42/100 Dollars ($16,142.42) and lost wages of One Hundred Thirty-three Thousand Eight Hundred Fifty-seven and 58/100 Dollars ($133,857.58).

By order dated July 24, 1991, the lower court denied the appellant's motion to set aside the verdict or grant a new trial. The appellant, Sears, now argues that the lower court erred in its ruling and appeals from that order.

Sears argues that the appellee must prove that Sears was negligent and maintains that the only argument which would possibly permit the appellee to recover in this case relates to the appellee's assertion that Sears owed the appellee a duty to provide a reasonably safe place to work. However, Sears states that there was absolutely no evidence that Sears was guilty of any negligence which either proximately caused or contributed to the appellee's injuries.

The appellee bases his argument on the general proposition that a property owner owes a duty to employees of contractors and subcontractors to provide a safe work environment. The appellee contends that his accident could have been prevented, and that as the owner of the property, Sears owed him a duty to prevent it.

■ To support this position, the appellee cites this Court's decision in *Pack v. Van Meter*, 177 W.Va. 485, 354 S.E.2d 581 (1986), wherein we stated that "[u]nder W.Va.Code, 21–3–1, the employer and the owner of a place of employment, place of public assembly, or a public building is affixed with a statutory responsibility to maintain such place in a reasonably safe condition." *Id.* at syl. pt. 3.[1]

In response, Sears cites *Hamrick v. Aerojet–General Corp., Indus. Systems Div.*, 528 F.2d 65 (4th Cir.1975), and argues that W.Va. Code § 21–3–1 applies only to the employer-employee relationship, and does not create a duty on the part of Sears as owner.

In *Hamrick*, an employee of a subcontractor sued the general contractor after being injured at a construction site. The District Court denied relief, and the Fourth Circuit Court of Appeals affirmed. The employee argued that W.Va.Code § 21–3–1 requires employers to take precautions to protect employees from injury from mechanical apparatus. However, noting this Court's decision in *Chenoweth v. Settle Engineers, Inc.*, 151 W.Va. 830, 838–839, 156 S.E.2d 297, 302 (1967), the District Court found that W.Va. Code § 21–3–1 is applicable only to the employer-employee relationship. Moreover, the Fourth Circuit agreed with the District Court's reasoning that the statute's reference to owners of places of employment "now or hereafter *constructed*," "indicated a legislative intent to make the safety requirements applicable to *operational* industrial facilities, not to those which are merely under construction." 528 F.2d at 67.

The specific issue addressed by this Court in *Pack v. Van Meter, supra,* was whether the owner of a place of employment leased to an employer is liable to a tenant's employee for a violation of W.Va.Code § 21–3–6, which requires handrails on stairways and safe treads on steps. We concluded that this type of responsibility was one which was "reasonably shared" by the employer and the owner of the place of the employment. Significantly, however, we acknowledged that "some of the provisions in W.Va.Code, 21–3–1 through –18, involve safety requirements that are clearly the responsibility of an employer because they involve machines or other instrumentalities *directly related to the employment activity* over which the owner of the place of employment exercises no control." 177 W.Va. at 490, 354 S.E.2d at 586 (emphasis added).

In the case now before us, the property owner, Sears, points out that under the terms of its general contract, the contractor, Mellon, was responsible for the safety of its employees, while Mellon's employees were

---

1. Specifically, W.Va.Code § 21–3–1 (1989) provides that:

Every employer shall furnish employment which shall be reasonably safe for the employees therein engaged and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render employment and the place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees ... Every employer and every owner of a place of employment, place of public assembly, or a public building, now or hereafter constructed, shall so construct, repair and maintain the same as to render it *reasonably safe*. (Emphasis added.)

also obligated to look out for their own safety.[2] Moreover, the appellee himself testified that he was injured because he didn't lock the wheels on the scaffold, which enabled the scaffold to move.

At trial, Zando supervisor Richard Houston testified that the general contractor, Mellon, was responsible for providing the scaffolds and complying with OSHA regulations. Houston stated that, in his opinion, the appellee should not have been up on the scaffold, moving it along by holding on to the trusses, with the wheels unlocked. He also pointed out that guard rails were required only on the back and sides of scaffolds (and thus would not have prevented the appellee's injuries, because he fell forward), and that the appellee was capable of putting guard rails on himself if they were needed.[3] It was Houston's opinion that the work site was safe.

For his part, the appellee presented absolutely no evidence of Sears' negligence, but still maintained that Sears had a responsibility to prevent the accident. We disagree.

■■■ Sears' duty as an owner of a place of employment is to provide a reasonably safe place in which to work and to exercise ordinary care for the safety of persons working there. The "reasonably safe place to work" theory may not be used against the owner of a place of employment when the owner exercises no control over the equipment provided by the contractor for use by the contractor's employees.[4]

■■ In this instance, the building was not operational but was under construction, and Sears' control over the construction was apparently negligible. There is no evidence to indicate that the premises were not maintained in a "reasonably safe" condition, nor that Sears somehow failed to exercise ordinary care that otherwise would have prevented the accident.

It was Mellon, the contractor, who supplied the scaffold from which the appellee fell. The appellee was a carpenter who had considerable experience and familiarity with scaffolding. He assembled his own rolling scaffold. When he was working off the scaffold, he chose not to lock the wheels simply as a matter of his own convenience: if he didn't lock the wheels, he didn't have to climb down off the scaffold to unlock the wheels each time he needed to move it. The appellee conceded that this was the reason he was injured.

Sears did not owe the appellee a duty beyond that which it met, and there is no evidence to suggest that it did not maintain its premises in a "reasonably safe condition." Because we find that there was insufficient evidence to support the verdict, we reverse the judgment of the Circuit Court of Kanawha County.

Reversed.

WORKMAN, Chief Justice, concurring:

(Filed Dec. 14, 1993)

I concur with the majority's decision regarding the liability of Sears. I am alarmed,

---

**2.** Article 8.2(a)(1) and (2) of the general contract relates to the safety of persons and property and states that:

    *8.2 Safety of Persons and Property*
    (a) The Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:
    . (1) all persons acting directly or indirectly on the Site through or under the Contractor and all other persons who may be affected by the Work; .
    (2) all the Work and all materials and equipment to be incorporated therein, whether in storage on or off the Site, under the care, custody or control of the Contractor or any of his Subcontractors or Subsubcontractors; ...

**3.** An expert who testified for the appellee stated that OSHA regulations require guardrails and toe boards on scaffolds. However, he admitted that OSHA did not apply to an owner and an employee of a contractor, but only between an employer and employee. He also testified that an employee must look out for his own safety and comply with occupational safety and health standards, and that when a worker is on a scaffold, the wheels must be locked.

    Both counsel and the court agreed that OSHA regulations were not binding on the appellant, Sears.

**4.** *See Pasquale v. Ohio Power Co.,* 187 W.Va. 292, 418 S.E.2d 738 (1992), for a discussion of the duties that an employer of an independent contractor owes to employees of the independent contractor.

however, both at the cursory analysis made by the majority of the issues, and at the breadth of syllabus point 3. These issues are sufficiently consequential (not only to the parties, but to the whole area of law involved) that they deserve much fuller examination and the enunciation of a much narrower rule than the one stated in the syllabus point.

The majority fails to even examine the Appellee's primary arguments. In support of his argument regarding Sears' liability, the Appellee relies upon language in the contract which is not addressed in any way by the majority. Specifically, the contract provided that Sears had the right to stop work on the project if the contractor failed to correct defective work or failed to supply or install materials or equipment in accordance with the contract.[1] Thus, the Appellee contended that Sears had an obligation to stop work once it discovered that installation of materials or equipment was not being performed pursuant to contractual agreements relating to safety.[2]

The Appellee maintains that Sears had a representative on site and had an obligation to exercise its right under the contract to stop the installation of materials in a dangerous manner. Further, the Appellee argues that Sears maintained sufficient control or supervision over the work performed to have prevented the independent contractor from violating safety regulations and conducting its work in an unsafe manner. Its failure to do so, the Appellee contends, constituted negligence.

The Appellee's argument is based in part on our holding in *Pasquale v. Ohio Power*

*Co.*, 187 W.Va. 292, 418 S.E.2d 738 (1992), wherein we set forth three scenarios under which an employer owed a duty to employees of an independent contractor:

An employer owes a duty to provide a reasonably safe place to work to employees of independent contractors who are on the premises. This duty includes the duty to warn of latent defects existing before the work is started that are known to the employer, but are not readily observable by the employee. *The employer of an independent contractor will also be liable to such contractor's employee if he retains some control or supervision over the work which negligently injures the employee.* Finally, the employer is liable for an injury to an employee of an independent contractor caused by the negligence of the employer. (emphasis added)

*Pasquale*, 187 W.Va. at 305, 418 S.E.2d at 751. Although the majority discusses the third concept set forth above, it is the second concept of retaining control or supervision upon which the Appellee primarily relies.

In *Pasquale*, we remanded the matter for a jury determination regarding a power company's negligence. We found evidence that the power company had been negligent in failing to provide a safe workplace for work on short-circuited cable, that it had placed red tags too far from the worksite, that it had failed to point out the actual de-energized cable, and that it had refused to allow the contractor's foreman to take prints of the cable layout room. We found this evidence sufficient to justify jury consideration of the power company's negligence.

**1.** The contract provided in part: 5.2(a) If the contractor fails to correct defective Work or fails to supply or install materials or equipment in accordance with the contract, the Owner may order the contractor to stop the Work, or any portion or part thereof, until the cause for such order has been eliminated. (b) Any order to stop any part or portion of the Work which is given to the contractor shall bind the contractor...., such stop order becoming effective upon issuance to the contractor.

**2.** The contract provided in part: 8.2 *Safety of Persons and Property* (a) The contractor shall take all reasonable precautions for the safety of and shall provide all reasonable protection to prevent

damage, injury or loss to: (1) All persons acting directly on the Site through or under the contractor and all other persons who may be affected by the work; ... (b) The contractor shall comply with all applicable laws, ordinances, rules, regulations and lawful orders of any public authority having jurisdiction for the safety of persons or property or to protect them from damage, injury or loss. He shall erect and maintain and otherwise implement, as required by existing conditions and the progress of the Work, all safeguards for safety and protection ... (e) The contractor shall designate a responsible member of his organization at the Site whose duty shall be the prevention of accidents....

Similarly, in *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1970), we found support for a jury determination that Georgia–Pacific, as the employer, exercised sufficient control over the independent contractor to justify holding Georgia–Pacific liable for injury to an employee unloading logs. Georgia–Pacific had purchased the crane involved in the accident, had furnished it for the use of the independent contractor, had brought it to the job site, and was responsible for its care, repairs, inspections, etc. We found that factual scenario sufficient to support a jury's conclusion regarding Georgia–Pacific's liability. Specifically, we stated in syllabus point 1:

> One who would defend against tort liability by contending that the injuries were inflicted by an independent contractor has the burden of establishing that he neither controlled nor had the right to control the work, and if there is a conflict in the evidence and there is sufficient evidence to support a finding of the jury, the determination of whether an independent contractor relationship existed is a question for jury determination.

In the present case, the contractual provision relating to Sears' right to stop the work seems on its face to exist in order to protect Sears against failure of the independent contractor to correct defective work or against supply or installation of materials or equipment not in accordance with the contract, not in order to protect employees of an independent contractor. Furthermore, the *right* to stop the work does not in and of itself impose an *obligation* to stop the work. Here the scaffolding was not equipment which was being supplied or installed, but was a mechanism being used by the independent contractor to facilitate the performance of work being done under the contract.

The majority's formulation of an "overly-expansive" new syllabus point causes great concern. Its present wording is susceptible of misinterpretation and should be more narrowly drawn. The syllabus point provides that the reasonably safe workplace theory may not be used against the owner of a place of employment when that owner exercises no control over the equipment provided by the contractor. That construction not only fails to address the Appellee's argument as to the employer's *right* to control, but also leaves open the question of whether such lack of control is by choice, imposed by contract, or otherwise. A more precise explanation would state that the theory may not be used against the owner when the owner *has no obligation to exercise* control over the equipment.

While I concur with the result reached by the majority, this case's similarity to both *Pasquale* and *Sanders* give cause to ponder the issues with more scrutiny than utilized by the majority. *Pasquale* and *Sanders* presented us with examples of much more direct relationship between the employer and the instrumentality of injury. The distinguishing characteristics of the present case, while sufficient to justify the majority's final determination, are much less obvious than the majority intimates. We must use caution, when deciding close cases of this nature, to refrain from broad, sweeping statements regarding the type of liability attempted to be imposed in this case.