505 S.E.2d 611

Thomas E. KERNS, an individual,
Plaintiff Below, Appellant,

v.

SLIDER AUGERING & WELDING, INC.,
a West Virginia Corporation; The Salem Tool Company, an Ohio Corporation; Salem Tool, Inc., a Kentucky Corporation; 92 Coal Corp., a West Virginia Corporation; and S & M Glass, Inc., a West Virginia Corporation, Defendants Below, Appellees.

SLIDER AUGERING & WELDING,
INC., Third–Party Plaintiff
Below, Appellee,

v.

STEAR AUGER MINING, INC., a Corporation; General Electric Company, a Corporation; and Boyer Equipment Co., a Corporation, Third–Party Defendants Below, Appellees.

S & M GLASS, INC., Third–Party
Plaintiff Below, Appellee,

v.

GENERAL ELECTRIC COMPANY, a
Corporation, Third–Party Defendant
Below, Appellee.

No. 24017.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 14, 1997.

Decided Dec. 16, 1997.

E. William Harvit, Shinaberry & Meade, Charleston, Bradley Oldaker, Wilson & Bailey, Weston, for the Appellant.

James A. Liotta, Tharp, Liotta, Janes & Yokum, Fairmont, for Appellee Slider Augering & Welding, Inc.

David K. Schwirian, Pauley, Curry, Sturgeon & Vanderford, Charleston, for Appellee 92 Coal Corp.

Harold K. Sklar, McNeer, Highland, McMunn & Varner, Clarksburg, for Appellee S & M Glass, Inc.

Carol Marunich, Furbee, Amos, Webb & Critchfield, Fairmont, for Appellee Stear Auger Mining, Inc.

Steven R. Hardman, Bowles Rice McDavid Graff & Love, Parkersburg, for Appellee General Electric Company.

M. Claire Winterholler, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for Appellee Boyer Equipment Co.

PER CURIAM:[1]

This action is before this Court upon an appeal of the final orders of the Circuit Court of Marion County entered on July 9, 1996, and November 12, 1996. The appellant, Thomas Kerns, an employee of appellee, Slider Augering and Welding, Inc. (hereinafter "Slider"), was injured in a mining accident while he was performing auger mining operations for appellee, 92 Coal Corporation (hereinafter "92 Coal"). Pursuant to the final orders, the circuit court granted summary judgment in favor of the appellees.

This Court has before it the petition for appeal, the designated record, and the briefs and argument of counsel. For the reasons stated below, this Court is of the opinion that appellant has failed to make a showing that factual evidence exists to support the requirements of *W. Va. Code*, 23–4–2(c)(2)(ii)(B) and (D) [1991]. This Court is also of the opinion that appellant has failed to making a showing that factual evidence exists to prove the theories of failure to provide a reasonably safe place to work, general negligence, joint venture, and negligent hiring. Accordingly, we affirm the decisions of the circuit court.

I.

This case arises out of an explosion that occurred on September 10, 1991, during auger mining operations at the Coontz No. 1 Mine in Barbour County. As a result of this explosion, the appellant was seriously and permanently injured. The auger mining operations were being performed by Slider as an independent contractor hired by 92 Coal, the corporation which owned and operated the mine. Slider was formed in 1988 by its sole shareholder, Thomas Slider, for the purpose of conducting auger mining operations as a contract miner. The appellant was hired by Mr. Slider as the auger operator.[2]

The September incident was actually the second explosion to occur at the mine.[3] The first explosion occurred on July 23, 1991, also during auger mining operations. Both explosions were investigated by the United States Department of Labor, Mine Safety and Health Administration (hereinafter MSHA). After the first explosion, MSHA issued a report which concluded that "the auger operator and auger helper were burned because they were in direct line with the flames and force which came out of the auger hole." MSHA issued a citation to Slider stating it was in violation of 30 C.F.R. 77.1504(c) by having workers in direct line with the auger hole while coal was being cut. In order to abate the citation, appellant, on behalf of Slider, consulted with both MSHA and the State Department of Labor to construct a guard/shield on the auger machine to protect the operator in the event of future ignition. Thereafter, auger mining operations resumed at the mine until the second explosion.

The second explosion happened in the Red Stone seam near where the first explosion occurred. When Slider resumed operations

**1.** We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992) (*"Per curiam* opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta* .... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published *per curiam* opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court

will do so in a signed opinion, not a *per curiam* opinion.").

**2.** The record indicates that the appellant was also the job foreman. He negotiated the contract with 92 Coal to perform its augering operations and generally ran the day to day operations of Slider.

**3.** Appellant was also injured in the first explosion. He received burns to his stomach and arms.

after the first explosion, it began augering in the Pittsburgh seam. However, sometime prior to the second explosion, Slider began augering again in the Red Stone seam. According to the MSHA investigative report, on the morning of the second explosion, 92 Coal's mine foreman completed an examination of the auger site around 6:30 a.m. and found no hazards. At 7:00 a.m., Slider began its day shift, but a rainstorm postponed augering operations until approximately 8:00 a.m. Operations then proceeded normally until around 10:30 a.m., when 92 Coal's foreman returned to the site to perform the on-shift examination of conditions. The foreman left the area finding no percentage of methane and no hazards. Operations resumed and continued until around 12:30 p.m., when the auger machine hit something hard and stalled. Fire, smoke, and coal dust exploded immediately from the hole.

MSHA concluded that the second explosion was caused in the same manner as the previous explosion. Both explosions resulted from the ignition of flammable methane and/or dust. However, no citations were issued after the second explosion.

Appellant filed suit after the second explosion claiming that Slider acted with "deliberate intention" as set forth in the provisions of *W. Va.Code*, 23–4–2(c)(2)(ii). Appellant also alleged that 92 Coal was liable under theories of failure to provide a reasonably safe place to work, general negligence, joint venture, and negligent hiring of an incompetent contractor.[4] Both Slider and 92 Coal filed motions for summary judgment. The circuit court concluded that with respect to Slider, appellant was unable to make a showing that factual evidence existed to support all of the

requirements to establish "deliberate intention" under *W. Va.Code*, 23–4–2(c)(2)(ii). Specifically, the court found that appellant was unable to show subjective realization on the part of Slider of the existence of an unsafe working condition and that Slider intentionally exposed appellant to an unsafe working condition. With regard to 92 Coal, the court concluded that appellant was unable to show that factual evidence existed to support the elements necessary to prove failure to provide a reasonably safe place to work, general negligence, joint venture, or negligent hiring of an incompetent contractor. Therefore, 92 was also granted summary judgment as reflected in the final orders.

## II.

### SLIDER AUGERING & WELDING, INC.

■ As previously mentioned, appellant seeks to hold Slider liable for his injuries on the basis of "deliberate intention" pursuant to *W. Va.Code*, 23–4–2(c)(2)(ii). In syllabus point 2 of *Mayles v. Shoney's Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990), this Court observed that: "A plaintiff may establish 'deliberate intention' in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided in *W. Va.Code*, 23–4–2(c)(2)(ii) (1983)." *See also* syl. pt. 2, *Sias v. W–P Coal Co.*, 185 W.Va. 569, 408 S.E.2d 321 (1991); syl. pt. 2, *Blevins v. Beckley Magnetite, Inc.*, 185 W.Va. 633, 408 S.E.2d 385 (1991). Specifically, the plaintiff must show:

(A) That a specific unsafe working condition existed in the workplace which pre-

---

**4.** Appellant also filed suit against Salem Tool Company, an Ohio corporation, Salem Tool, Inc., a Kentucky corporation, and S & M Glass, Inc., a West Virginia corporation. Stear Auger Mining, Inc., General Electric Company, and Boyer Equipment Company were later named as third party defendants. At the hearing on Slider and 92 Coal's motions for summary judgment, the Court also considered a motion for summary judgment filed by Boyer Equipment Company; a motion for partial summary judgment or a separate trial filed by Stear Auger Mining, Inc.; a motion for declaratory judgment filed by TIG Insurance Company; and a motion to dismiss claims for contribution to third party complaints

filed by General Electric Company. Because Slider and 92 Coal's motions were granted, the court found that the motions filed by Boyer Equipment Company and Stear Auger Mining, Inc., were moot and the third-party claims against them were dismissed. The motion filed by TIG Insurance Company was denied. The Court concluded that General Electric's motion to dismiss claims for contribution was moot as to the third party complaint of Slider; however, the same motion with respect to the third party complaint of S & M Glass, Inc. was denied. In his petition for appeal, appellant does not assign as error the court's rulings with respect to these additional parties.

sented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

*W. Va.Code*, 23–4–2(c)(2)(ii) [1991].[5]

Following extensive discovery in this case, Slider moved for summary judgment contending that appellant had not presented sufficient evidence to establish "deliberate intention" under the five elements listed above. After conducting a hearing on the motion, the circuit court concluded that appellant had failed to make a showing that factual evidence exists to support the elements of subjective realization and intentional exposure found in subparagraphs (B) and (D), respectively, of *W. Va.Code*, 23–4–2(c)(2)(ii). Ac-

cordingly, the circuit court granted summary judgment in favor of Slider.[6]

Pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure*, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In syllabus point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *See also* syl. pt. 3, *Evans v. Mutual Mining*, 199 W.Va. 526, 485 S.E.2d 695 (1997); syl. pt. 1, *McClung Investments, Inc. v. Green Valley Community Public Service Dist.*, 199 W.Va. 490, 485 S.E.2d 434 (1997). More recently, we have observed that:

Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). *See also* syl. pt. 2, *Cottrill v. Ranson*, 200 W.Va. 691, 490 S.E.2d 778 (1997); syl. pt. 2, *McGraw v. St. Joseph's Hospital*, 200 W.Va. 114, 488 S.E.2d 389 (1997). In syllabus point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court stated that: "A circuit court's entry of summary judgment is reviewed *de novo*." *See also* syl. pt. 4, *Dieter Engineering Services, Inc. v. Parkland Development, Inc.*, 199 W.Va. 48, 483 S.E.2d 48 (1996); syl. pt. 1, *Smith v. Stacy*, 198 W.Va. 498, 482 S.E.2d 115 (1996).

Appellant asserts that summary judgment was not appropriate because the evidence

---

5. *W.Va.Code*, 23–4–2 was amended in 1994. However, those amendments are not relevant to this case. Moreover, the specific language of *W.Va.Code*, 23–4–2(c)(2)(ii), as set forth above, has remained unchanged.

6. We note that the circuit court made no findings with respect to the requirements of subparagraphs (A), (C), and (E) of *W.Va.Code*, 23—2(c)(2)(ii). Accordingly, those issues are not before this Court.

shows that Slider had knowledge that both the location where the mining was occurring and the equipment were unsafe [7] thereby satisfying the subjective realization requirement. Appellant further asserts that the intentional exposure requirement has been met because Mr. Slider harassed him to go back to work and told him to make repairs to the auger machine as cheaply as possible.

■ In syllabus point 3 of *Blevins,* we held:

> Given the statutory framework of *W.Va. Code* §§ 23–4–2(c)(2)(i) and (ii), (1983, 1991) which equates proof of the five requirements listed in W. Va.Code § 23–4–2(c)(ii) with deliberate intention, a plaintiff attempting to impose liability on the employer must present sufficient evidence, especially with regard to the requirement that the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and the strong probability of serious injury or death presented by such specific unsafe working condition. This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge.

In this case, we find that no genuine issue of material fact exists as to whether Slider subjectively realized and appreciated the existence of an unsafe working condition. As set forth above, the record shows that Slider was only issued one citation following the first explosion. Once appellant, on behalf of Slider, designed and constructed a guard on the auger machine to protect the operator in the event of a future explosion, MSHA permitted operations to resume. Obviously, if MSHA and its experts had been aware of an

unsafe condition, Slider would not have been allowed to return to work. The deposition testimony in the record indicates that everyone involved including the investigators and the appellant thought that the first explosion was a "freakish accident." The record also reveals that Mr. Slider's mining experience prior to the date of the first explosion was minimal. Mr. Slider relied upon MSHA's experts as well as the appellant regarding safety matters following the first explosion. In fact, appellant was authorized to shut down the job if he deemed it necessary for safety reasons. It is apparent that MSHA had no subjective realization as evidenced by its actions. Consequently, it would be virtually impossible for appellant to prove subjective realization on the part of Slider.

Appellant is also unable to prove intentional exposure. According to appellant's own deposition testimony, it was his choice to return to work and resume augering operations in the Red Stone seam. Appellant testified that Mr. Slider told him it was his decision as to whether to return to the same job site or look for a new job where Slider could auger coal. Appellant also testified that Mr. Slider did not participate in the decision to return to the Red Stone seam because he was out of the country at that time. Thus, the evidence disproves intentional exposure as well as subjective realization. Accordingly, the circuit court did not err in granting summary judgment in favor of Slider.

## 92 COAL CORP.

■ As previously noted, appellant also filed his cause of action against 92 Coal alleging that it failed to provide a reasonably safe place for appellant to work. This Court has recognized that: "The owner or occupier of premises owes to an invitee such as a non-employee workman or an independent con-

---

7. We note that with regard to *W.Va.Code,* 23–4–2(c)(2)(ii)(A), appellant claims that two unsafe working conditions existed which presented a high degree of risk and strong probability of serious injury or death. First, he asserts that the location of the mining operation was unsafe as a result of the prior explosion. The record indicates that the second explosion occurred in close proximity to the first explosion. Secondly, ap-

pellant asserts that the equipment, i.e. the auger machine, created an unsafe working condition because he was still in direct line with the bore hole as he operated the machine even though a guard/shield had been installed. Appellant testified during his deposition that he thought the guard/shield was a "joke," and he never believed it would protect him in the event of another explosion.

tractor the duty of providing him with a reasonably safe place in which to work and has the further duty to exercise ordinary care for the safety of such persons." Syl. pt. 2, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). *See also* syl. pt. 2, *Taylor v. Sears, Roebuck & Co.*, 190 W.Va. 160, 437 S.E.2d 733 (1993); syl. pt. 6, *Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 418 S.E.2d 738 (1992). However, we have also generally recognized that the owner who provides a reasonably safe place to work cannot be held liable unless the owner continues to exercise control over the workplace. In syllabus point 2 of *Henderson v. Meredith Lumber Co.*, 190 W.Va. 292, 438 S.E.2d 324 (1993), we explained:

> The goal of *W.Va.Code* 21–3–1 [1937] *et seq.* is to assure workers a reasonably safe workplace. The legislature placed such a responsibility on the employer and the owner. The employer's duty is directly related to the employment activity that is controlled by the employer and the owner's duty is limited to providing a reasonably safe workplace, unless the owner continues to exercise control of the place of employment.

In syllabus point 3 of *Henderson*, we further advised: "When the owner of a place of employment provides a reasonably safe workplace and exercises no control thereafter, the owner has complied with the responsibilities imposed under *W.Va.Code*, 21–3–1 [1937]."[8] In syllabus point 3 of *Taylor* we held that: "The 'reasonably safe place to work' theory may not be used against the owner of a place of employment when the owner exercises no control over the equip-

ment provided by the contractor for use by the contractor's employees."

■ 92 Coal claims that it exercised no control over any equipment used by Slider in its auger operations. We agree. Slider purchased its auger mining equipment before it began working at the Coontz mine. 92 Coal was not involved in Slider's daily operations and it did not participate in constructing the guard that was placed on the auger machine following the first explosion.

The record shows that the actions of 92 Coal were limited to merely indicating to Slider where to auger the coal. Appellant contends that this is evidence that 92 Coal exercised control over Slider's work. In response, 92 Coal asserts that a natural part of hiring someone to do a job is directing where it is to be performed. In *Taylor*, the plaintiff, a carpenter employed by Mellon–Stuart Company, the contractor constructing a Sears Automotive Center building, was injured when he fell from scaffolding. *Id.* at 161, 437 S.E.2d at 734. Although the plaintiff argued that Sears maintained sufficient supervision over the work to have prevented the independent contractor from violating safety regulations, the evidence indicated that Sears' control over the construction was "negligible." *Id.* at 163, 437 S.E.2d at 736. In the case before this Court, the trial judge found that the evidence was not sufficient to show that 92 Coal failed to provide a reasonably safe workplace. We conclude that the circuit court did not err in granting summary judgment in favor of 92 Coal as to the issue of whether 92 Coal failed to provide a reasonably safe work place.[9]

---

**8.** *W.Va.Code*, 21–3–1 [1937] provides, in pertinent part:

> Every employer shall furnish employment which shall be reasonably safe for the employees therein engaged and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render employment and the place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees[.]
>
> Every employer and every owner of a place of employment ... shall so construct, repair and maintain the same as to render it reasonably safe.

**9.** It appears from the record that appellant asserted a general negligence claim incorporating all prior allegations in the complaint and alleging that the negligence of all of the defendants acting singularly, concurrently, and/or in combination caused or contributed to appellant's injury. In granting summary judgment to 92 Coal on this issue, the circuit court found that 92 Coal's "advice" as to where and how to conduct the augering operations could not constitute actionable negligence. It is difficult to determine from the record whether the trial judge treated appellant's negligence claim separately from his claim of failure to provide a reasonably safe place to work. In any event, both claims are based on appellant's allegation that 92 Coal advised Slider regarding its augering operations. Inasmuch as

Appellant next contends that 92 Coal is liable because it was involved in a joint venture with Slider to mine coal. In syllabus point 2 of *Price v. Halstead,* 177 W.Va. 592, 355 S.E.2d 380 (1987), this Court held:

A joint venture or, as it is sometimes referred to, a joint adventure, is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. It arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied.

*See also* syl. pt. 2, *Johnson v. State Farm Mut. Auto. Ins. Co.,* 190 W.Va. 526, 438 S.E.2d 869 (1993). The record in this case indicates that the relationship between Slider and 92 Coal was that of an independent contractor. Although it is unclear whether a written contract existed, it appears that there was an agreement whereby 92 Coal agreed to pay Slider $8.50 per ton of coal produced plus fuel. There is no evidence that Slider and 92 Coal agreed to share profits and losses. Furthermore, appellant's own liability expert testified that in his opinion there was no joint ventureship between Slider and 92 Coal. Accordingly, we find no merit to this assignment of error.

Appellant also contends that 92 Coal is liable because it hired a contractor that was not qualified to perform the augering operations. Appellant asserts that if 92 Coal had simply inquired, it would have learned that Mr. Slider had no augering experience and that appellant had little experience. The record shows that appellant approached the president of 92 Coal and negotiated the contract on behalf of Slider. After inducing 92 Coal to hire Slider, appellant cannot now assert a negligent hiring claim against it. Accordingly, we find no merit to this assignment of error.

Based upon all of the above, this Court is of the opinion that the circuit court committed no error in concluding that the appellant failed to present sufficient evidence under requirement (B) concerning subjective real-

ization and requirement (D) concerning intentional exposure of *W.Va.Code,* 23–4–2(c)(2)(ii). This Court is also of the opinion that the circuit court committed no error in concluding that appellant failed to show that evidence exists to prove that 92 Coal exercised control over appellant's work at the mine. Finally, this Court is of the opinion that the circuit court correctly concluded that appellant cannot prove general negligence, joint venture, or negligent hiring. Accordingly, the orders of the Circuit Court of Marion County entered on July 9, 1996, and November 12, 1996, are affirmed.

Affirmed.

STARCHER, J., dissents and would reverse the trial judge's granting of summary judgment.

---

we affirm the circuit court's decision concerning failure to provide a reasonably safe place to work, it follows that we affirm the circuit court's

decision regarding appellant's general negligence claim.